**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| CALVIN MATHIS, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO. 5:05-CV-009 (GMF) |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |

_____

**ORDER**

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and he seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties have filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of

whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I.       **Whether the ALJ failed to properly consider the Claimant's obesity in combination with his other impairments?**

II.      **Whether the ALJ erred in his consideration of the Claimant's failure to obtain an AFO device?**

III.     **Whether the ALJ failed to consider the Claimant's non-exertional restrictions?**

IV.     **Whether the ALJ erred in basing his decision on the framework of Medical Vocational Rule 201.29?**

### Administrative Proceedings

Claimant filed an application for social security disability insurance benefits and supplemental security income benefits on October 28, 2002. (Claimant's Brief, p. 1). His application for SSI benefits was denied initially and upon reconsideration. Claimant then requested a hearing which was held on June 30, 2004. The ALJ denied Claimant's claim on July 30, 2004. Claimant then requested review of the ALJ's decision by the Appeals Council. Thereafter, on November 24, 2004, the Council issued an order denying review, making it the final decision of the Commissioner.

### Statement of Facts and Evidence

Claimant Mathis alleges that he is disabled and entitled to benefits due to obesity and an injury he sustained to his left knee while playing basketball. (R-16, 18). Subsequent to the hearing, the ALJ found that the Claimant had severe impairments but that he was capable of performing sedentary exertional work with a sit/stand option. (R- 20).

**I.      Whether the ALJ failed to properly consider the Claimant's obesity in combination with his other impairments?**

As is required in Step 3 of the Regulations, after reviewing the entire medical record, including the reports by the state agency consultants, the ALJ assessed the claimant's impairments and found the status post left knee dislocation with chronic peroneal nerve injury and obesity to be severe. (R-17, 20).

Despite the elimination of Listing 9.09, obesity is still a factor for disability determination according to SSR 02-1p. That regulation added language to the prefaces of musculoskeletal, respiratory and cardiovascular body system listings, "to provide guidance about the potential effects obesity has in causing or contributing to impairments of those body systems." *See* Listing Sections 1.00, 3.00, 4.00. The regulation also instructs that obesity can be considered at other steps of the sequential evaluation process including the assessment of a residual functional capacity.

The ALJ considered Claimant's obesity along with his knee injury, but found that those impairments did not meet or equal a Listing found in the Regulations. (R-20). Despite Claimant's argument otherwise, the record reflects that the ALJ did consider Claimant's obesity in combination with his other impairment and discussed them both in detail. (R-17-18).

Furthermore, Claimant failed to meet his burden of showing how his obesity affected his other conditions, so as to meet or equal a listing. Regulation 00-3p states, "We will not make assumptions about the severity of functional effects of obesity combined with other

5

impairments. Obesity in combination with other impairments may or may not increase the severity or functional limitations of other impairments." This court finds that Claimant did not present evidence that his obesity increased the severity of other impairments so that they met or equaled a listing, therefore, there was no error as to this claim.

**II.  Whether the ALJ erred in his consideration of the Claimant's failure to obtain an AFO device?**

The Plaintiff claims that the ALJ's credibility finding is based on the claimant's failure to purchase an ankle-foot orthosis (AFO). (Pl.'s Brief at p.4). The record, however, reflects that the ALJ found Claimant was not fully credible for other stated reasons.

In discussing Claimant's residual functional capacity, the ALJ found:

> I find that the Claimant retains the residual functional capacity to perform work at the sedentary exertion level with a sit/stand option. Although the Claimant currently utilizes a cane, this could be eliminated with the acquisition of the ankle foot orthosis (AFO) prescribed by his physicians. Sedentary work involves lifting no more than 10 pounds at a time with occasional lifting or carrying. Sitting should generally total approximately six hours of an eight hour workday. Periods of standing or walking should generally total no more than about two hours in an eight hour workday. . . . Although I have no doubt that the claimant's impairment limits his functioning, I do not find the degree of limitation alleged by the claimant. Thus, I do not find the claimant fully credible. I have also considered any medical opinions, which are statements from acceptable medical sources, that reflect judgments about the nature and severity of the impairment and resulting limitations (20 CFR §404.1527(f) and Social Security Rulings 96-2p and 96-6p). The record indicates that the claimant suffers from pain and swelling stemming from a peroneal nerve injury. He walks with a cane because of expressed financial inability to purchase an

> ankle-foot orthosis. This device would presumably enable him to bear weight on his injured limb. Although the state agency's medical consultant found that claimant could perform medium work, given the claimant's continuing difficulty with his left knee, I accord greater weight to the limitations assessed by claimant's surgeon (Exhibit 5F). Although the claimant has been limited in his activities since the onset of his impairment, his limitations would not preclude all work activity. He states that he baby-sits two toddlers on Tuesday and Wednesday of each week. According to him, he doesn't have to do very much for the children, but I remain dubious in view of the fact that he apparently cares for them when they are sick (Exhibit 4F, p.14). Moreover, some of his physical limitations are likely to be remedied with the purchase of the ankle-foot orthosis prescribed by his physician's (Exhibit 6F, p.6). At the hearing, the claimant testified that he had not sought assistance from the Georgia Department of Labor, Vocational Rehabilitation Division to assist him with the purchase of this device, which would facilitate his re-entry into the job market. In response to my questioning, he admitted that the only problem he has that prevents him from working is with respect to his left leg.

(T-18-19). While Plaintiff claimed that he had limitations, such as swelling in the feet, that restricted him every day, this was not supported by evidence in the record. The records of Dr. Todd Kinnebrew reflect only two complaints of swelling after the second surgery and neither complaint was of swelling in Plaintiff's feet. (R-159-183). Furthermore, Claimant testified that he babysat two toddlers and cared for them by himself for a period of time, two days a week. This included caring for them when they were sick. (R-171).

The discussion of the AFO did not center around Claimant's credibility as to his limitations or whether he failed to follow treatment, but rather how those limitations might be relieved. Therefore, the ALJ's residual functional capacity assessment is supported by

substantial evidence independent of the AFO discussion. This claim is without merit.

### III.    Whether the ALJ failed to consider the Claimant's non-exertional restrictions?

Plaintiff claims that the ALJ failed to properly consider the swelling in Plaintiff's feet. (Plaintiff. Brief, p.4). However, the record reflects that the ALJ considered all of the medical evidence discussed above. This medical evidence includes treatment notes, hospital records, medical records, x-rays, ultrasounds, surgical notes, objective tests and medical assessments. There is no medical evidence of record after the second surgery in November 2002, in which Claimant complains of swelling in his feet. On February 11, 2003, Plaintiff appeared at Dr. Todd Kinnebrew's office, complaining of swelling in his leg in the area of the tibial tunnel. (R-162). On June 10, 2003, Plaintiff complained to Dr. Kinnebrew of swelling in his knee. (R-201). The aforementioned are the only two records in evidence in which Plaintiff complains of swelling after his second surgery and neither complaint involved his feet. The only evidence of swelling in Plaintiff's feet comes from his own testimony and statements, there is no objective medical evidence to support this contention. Plaintiff failed to establish that he suffered from swelling of the feet on more than an occasional basis. The record reflects that the ALJ considered the swelling of Plaintiff's feet during his assessment of Plaintiff's residual functional capacity. (R-18). Furthermore, Plaintiff failed to establish that the swelling would cause any additional limitations beyond those incorporated into the RFC finding made by the ALJ and considered by the VE. The ALJ committed no error as to this claim.

## IV.    Whether the ALJ erred in basing his decision on the framework of Medical Vocational Rule 201.29?

Once a Plaintiff's residual functional capacity is determined, the ALJ must decide whether the Plaintiff can perform his past work, and if not, whether there is any work in the economy that this Plaintiff could engage in given his impairments.  Past work is that which has been previously engaged in by the Plaintiff within the last fifteen years or the fifteen years prior to the onset of the disability.

The Code of Federal Regulations requires an ALJ to make a determination of what particular jobs the Claimant would be physically able to perform, taking into consideration his limitations. See, 20 C.F.R. §§ 416.920 (f) & (e).  Furthermore, in *Jones v. Apfel*, a 1999 Eleventh Circuit decision, the Court held that where the Claimant has shown that he or she can no longer perform past relevant employment due to his impairments, the burden shifts to the Commissioner to establish the existence of other employment the Claimant is able to perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Although the ALJ may have inadvertently referred to the Medical Vocational Rule 201.29, it is clear from the record that he did not use said guidelines to direct an unfavorable decision against Plaintiff.  The ALJ stated:

> The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion

9

> (as defined in Social Security Ruling 83-10) and there are no nonexertional limitations. When all the criteria of the Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice. (R-19).
>
> In cases such as this, where the claimant has non-exertional as well as exertional limitations, a vocational expert may be utilized to assist the Administrative Law Judge in determining whether there are any jobs the claimant can perform. Accordingly, I asked the vocational expert to consider an individual of the claimant's age, education, and vocational background with a residual functional capacity as assessed herein. The vocational expert testified that there are at least three jobs that exist in significant number in the national economy that an individual such as the claimant could perform. . . . (R-20).
>
> Based on the testimony of the vocational expert, I find that there is other work that exists in significant numbers within the national economy that will accommodate claimant's residual functional capacity. (R-20).

In the matter at issue, it is clear the ALJ elicited the testimony of a Vocational Expert (VE) to assist in making such a determination. (R- 44-48). Given the Claimant's medical conditions, and following the Medical-Vocational Guidelines, the ALJ questioned the VE before making his determination that there was, in fact, employment suitable for this Claimant. *Id.* Specifically, the ALJ posed a hypothetical question to the VE, asking if Claimant would be able to return to any former line of work, taking into account his age, education level, work experience and functional limitations. *Id.* The VE testified that the Claimant would not be able to return to his past relevant occupations, which the VE

considered to be "medium" work. (R-44). The ALJ then asked if there were jobs available for people of the same age, education level, work experience and functional limitations as the Claimant. (R- 44-48). In asking the VE this question, the ALJ included considered Claimant's status post left knee dislocation with chronic peroneal nerve injury and obesity. The ALJ further included in the hypothetical question posed to the VE the Claimant's physical limitations which included a sit/stand option, and no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (R-44-47). The VE, after taking into account all of the limitations, was able to name sedentary positions which would fit a person with the functional limitations of this Claimant. (R-46-47).

A review of the ALJ's Findings in this matter reveals that, based on the testimony of the VE, the ALJ found that the Claimant has the residual functional capacity to perform a significant range of sedentary work with a sit/stand option. (R-21). In making that determination, the ALJ took into account Claimant's status post left knee dislocation with chronic peroneal nerve injury and obesity. (R-17-21). Therefore, Plaintiff's claim that the ALJ incorrectly used the Medical Vocational Rule 201.29 to make said determination, is without merit. This court further finds that Plaintiff failed to establish that he had less than "average verbal skills" or that the number of telemarketing positions had been significantly reduced in the national economy, so as to prevent him from being able to perform the jobs cited by the Vocational Expert. The ALJ committed no error as to this claim.

## **CONCLUSION**

Based on the evidence presented, no basis is found for the Plaintiff's claims that the ALJ committed error as the determinations made were completely within his judicial discretion. Furthermore, the record fails to reveal any evidence that the ALJ acted outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, **IT IS ORDERED** that the decision of the Defendant Commissioner of Social Security be **AFFIRMED**.

THIS the 21st day of June, 2005.

                                                    S/ G. MALLON FAIRCLOTH
                                                    UNITED STATES MAGISTRATE JUDGE

mZc